Craig Mallory HEATH, Plaintiff,

v.

F/V ZOLOTOI, Official No. 625095, her engines, tackle, and appurtenances, In Rem,

Gordon Blue; John Young; John Jorgenson; Zolotoi General Partnership; and Tanadgusix (TDX) Corporation, In Personam.

No. C01–1988Z.

United States District Court, W.D. Washington, at Seattle.

May 12, 2004.

David A. Kohles, David A Kohles, Inc. PS, Stanwood, WA, Gregory Norman Bilyeu, Mt. Vernon, WA, for Plaintiff.

Dean G. von Kallenbach, Ginger Edwards, John Graeme Young, Shannon D Braden, Karien Lorraine Balluff, Gregory T Pereyra, Matthew Clayton Crane, Bauer, Moynihan & Johnson, Ragan L Powers, Davis Wright Tremaine LLP, Seattle, WA, for Defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on Plaintiff's Motion for Sanctions, docket no. 95. The Court considered the briefs submitted by the parties and the oral arguments of counsel on April 28, 2004, and the Court being fully advised, makes the following ORDER:

### BACKGROUND

Plaintiff's Motion for Sanctions, docket no. 95, arises from the law firm Young deNormandie & Oscarsson's ("the Young firm") failure to disclose witness statements to the plaintiff and co-defendant Central Bering Sea Fishermen's Corporation ("CBSFC"). The Young firm represents defendants Gordon Blue, Zolotoi General Partnership, Alaska Offshore, LLC, Orca Fisheries, Inc., and

PBS Vessel Management, Inc.[1] CBSFC, the only partner not represented by the Young firm, is represented by Bauer Moynihan & Johnson. Plaintiff seeks a finding of liability against all defendants.[2]

This action arises from the alleged injuries plaintiff received on or about January 28, 1999, while working as a seaman on board the crab vessel, the F/V ZOLOTOI. Second Am. Compl., docket no. 23, ¶ 6.1. The witness statements in question were given on January 29, 1999, one day after the accident, by Jon E. Jorgenson, the captain of the vessel, and two crew members, Daniel S. Brown, and Rick Edgemon. Edwards Decl., docket no. 108, Ex. B. Defendant Gordon Blue[3] described the circumstances from which these statements were taken in his recent deposition:

Q: Are there any statements from the crewman, actually handwritten statements from the crewman?

A: We had our forms.

\* \* \* \* \* \*

Q: Well, what's the procedure in terms of documentation after an accident like this?

A: We have forms aboard the vessel for the documentation of accidents. I think there was a Coast Guard form which is filed with the Coast Guard, and they include forms which are sent—brought to the office and forwarded to the underwriters in this case.

\* \* \* \* \* \*

Q: Who asked the crewmen to sit down and—

A: Captain.

Q: So Jon Jorgenson, shortly after the accident, would have asked each of the crewmen who has something to say, put it down in writing and sign your name to it, correct?

A: That's right.

Q: What's the reason that you do that on a vessel?

A: So there's a record of what happened.

\* \* \* \* \* \*

Q: Who put into the procedure that statements are to be taken by crew members who saw something?

A: Oh. Well, I don't think that's anything different than the general practice in the industry. It's my understanding what's to be done, and it's what we all do.

\* \* \* \* \* \*

Q: Where are those statements sent? What's done with them? What is done with the statements from the crew?

A: I keep them at the office, make them available to the claims adjusters and give them to the attorneys.

Q: So the whole process is just part of the normal operations procedure for this vessel and the industry, as far as you know.

\* \* \* \* \* \*

A. I guess so. . . .

\* \* \* \* \* \*

Q: . . . . In the management of the vessel ZOLOTOI, is the taking of statements and keeping of statements in your office the normal course of business?

A: Yes.

Blue Dep., docket no. 140, at 50:14—50:25, 58:5—58:20, 59:1—59:14, 60:1—60:4.

At some point, these witness statements were obtained by the Zolotoi General Partnership's insurance carrier and were placed in an adjuster's file. This action was filed on December 6, 2001. Compl., docket no. 1. At oral argument, the Young firm admitted it obtained the adjuster's file and these statements in early 2002, shortly after the Young firm appeared of record for Tanadgusix Corporation on March 21, 2002, *see* docket no. 7, and for defendant Young on April 30, 2002,

---

1. Defendants John Young, John Jorgenson, Zolotoi Management, Inc., and Tanadgusix Corp., who were represented by the Young firm, have been dismissed from this action. *See* docket nos. 53, 86, 89.

2. In Rem defendant F/V Zolotoi has not been served and is not presently before the court.

3. Gordon Blue is the President and sole shareholder of Zolotoi Management, Inc., a general partner of the Zolotoi General Partnership.

*see* docket no. 11. The Court concludes based on the admission of counsel and other court records that the Young firm had possession of these documents by April 2002.

In May 2003, plaintiff served Interrogatories and Requests for Production of Documents on the Young firm. Balluff Decl., docket no. 107, ¶ 2. With the exception of defendant Gordon Blue, the other defendants objected to plaintiff's discovery requests but produced some documents in July 2003. *Id.* ¶ 3; Ex. A at 12. Defendant Blue refused to answer the discovery requests for fear that providing answers would waive his defense of lack of personal jurisdiction. *Id.* ¶ 3; Ex. D. The pertinent discovery requests propounded by plaintiff and the Young firm's responses are as follows:

**REQUEST FOR PRODUCTION NO. 7: Any and all documents pertaining to plaintiff's accident and injury.**

*RESPONSE (Gordon Blue dated June 13, 2003):* Objection. Overbroad, vague, calls for documents protected by the work-product and attorney/client privileges.[4]

*RESPONSE (PBS, Orca, Alaska Offshore dated July 2, 2003):* Objection. This Request for Production is overbroad, burdensome and seeks information protected by the attorney-client and attorney-work product doctrines. Without waving these objections, Defendant responds as follows: See documents produced.[5]

**REQUEST FOR PRODUCTION NO. 9: Any statements, either written, taped, transcribed or communicated in any fashion of persons with knowledge, either direct or indirect, of the incident described in plaintiff's Complaint.**

*RESPONSE (Gordon Blue dated June 13, 2003):* Objection. Calls for documents protected by the work product and attorney/client privileges.[6]

*RESPONSE (PBS, Orca, and Alaska Offshore dated July 2, 2003):* Objection. This Request for Production seeks information that is protected by the attorney-client and attorney-work product doctrines.[7]

Plaintiff subsequently filed a motion to compel on August 29, 2003. Pl.'s Mot. to Compel, docket no. 65. The Court granted plaintiff's motion on November 26, 2003:

Plaintiff's Motion to Compel Answers to Discovery to Gordon Blue, docket no. 65, is GRANTED. Gordon Blue is directed to provide Plaintiff with complete and verified responses to the interrogatories and requests for production.

Minute Order, docket no. 86. Despite the Court's Order to provide "complete" responses, the Young firm continued to object to the production of certain documents:

**REQUEST FOR PRODUCTION NO. 7: Any and all documents pertaining to plaintiff's accident and injury.**

*SUPPLEMENTAL RESPONSE (Gordon Blue dated January 16, 2004):* Objection. This Request for Production is overbroad, burdensome and seeks information protected by the attorney-client and attorney-work product doctrines. Without waving these objections, Defendant responds as follows: See documents produced.[8]

**REQUEST FOR PRODUCTION NO. 9: Any statements, either written, taped, transcribed or communicated in any fashion of persons with knowledge, either direct or indirect, of the incident described in plaintiff's Complaint.**

*SUPPLEMENTAL RESPONSE (Gordon Blue dated January 16, 2004):* Objection. This Request for Production seeks information that is protected by the attorney-client and attorney-work product doctrines.[9]

The Young firm did not produce the witness statements in question in its initial disclosures or its responses to plaintiff's discovery requests, despite this Court's Order compelling "complete" responses to these routine discovery requests. The Young firm totally failed to even acknowledge the exis-

---

4. Kohles Decl., docket no. 96, Ex. 5 at 6.

5. *Id.,* Exs. 11 at 6, 13 at 6, 15 at 6.

6. *Id.,* Ex. 5 at 6–7.

7. *Id.,* Exs. 11 at 7, 13 at 7, 15 at 7.

8. Kohles Decl., docket no. 96, Ex. 7 at 6.

9. *Id.* at 6–7.

tence of these statements until the end of discovery. Furthermore, the Young firm did not produce a privilege log for the documents that it alleged were protected by the attorney-client and work-product privileges. Plaintiff and defendant CBFSC first learned that the defendants had statements written by crew members at the deposition of Gordon Blue on January 23, 2004, which was on the eve of the February 1, 2004 discovery cut-off. Kohles Decl., docket no. 96, at 2; Pereyra Decl., docket no. 101, ¶ 6.

After learning of their existence, plaintiff's counsel immediately requested copies of the witness statements. Kohles Decl., docket no. 96, at 2. Ginger Edwards, counsel from the Young firm, however, re-asserted the Young firm's objection that the documents were privileged under the attorney-client and work-product privileges. Blue Dep., docket no. 140, at 52:25—54:5. Ms. Edwards even objected to plaintiff learning which crew members gave statements. *Id.* at 51:6—9. Plaintiff's counsel cautioned Ms. Edwards that,

> [I]f you have the statements, let's have them, or else I'll bring a motion for terms, we'll be reconvening this deposition and Mr. Blue back down here to Seattle for it, and it's going to be on your dime, or I'm going to move to strike all of your defenses.

*Id.* at 53:11—16. Despite this warning, the Young firm again re-asserted the attorney-client and work-product privileges. *Id.* at 54:2—5. This Motion for Sanctions followed.

### DISCUSSION

Sanctions against CBSFC are not appropriate. The declarations submitted demonstrate that CBSFC did not have knowledge of the existence of the witness statements and did not participate in the Young firm's decision to withhold them.

However, the Court finds that sanctions against the Young firm and its clients are appropriate because the Young firm asserted frivolous privileges, failed to disclose the existence of the witness statements despite obligations imposed by the Federal Rules of Civil Procedure and this Court's Order, failed to provide a privilege log, and failed to con-

duct any investigation into the creation of the statements and the current state of the law on privileges.

### (1) *Attorney–Client Privilege*

Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Hirsch*, 803 F.2d 493, 496 (9th Cir.1986). This privilege applies when "necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). The crew members who prepared the contemporaneous statements were not represented by counsel, nor was an attorney present when the statements were made. No attorney ever asked that these statements be prepared. There is simply no basis to claim these statements were made by a client to an attorney. The Young firm's claims of attorney-client privilege are frivolous, as they have no basis in fact or law. At oral argument in late April counsel for the Young firm abandoned any claim under the attorney-client privilege.

### (2) *Work–Product Doctrine*

The witness statements are not protected work-product. The work-product doctrine protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. *See Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Work-product protection applies to "documents and tangible things prepared *in anticipation of litigation* or for trial" by or on behalf of a party. FED. R. CIV. P. 26(b)(3) (emphasis added). The burden is on the party asserting a work-product privilege to show that the withheld information was prepared in anticipation of litigation. "More than the mere possibility of litigation must be evident" for materials to be considered immune from discovery under the work-product doctrine. *See Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982). It

is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation. *See* Fed. R. Civ. P. 26(b)(3), Advisory Committee Notes ("Materials assembled in the ordinary course of business ... are not under the qualified immunity provided by this subsection."); *United States v. Adlman*, 134 F.3d 1194, 1202 (2nd Cir.1998)(even if documents prepared in the ordinary course of business might also be helpful in preparation for litigation, they do not qualify for protection); *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 69–70 (N.D.N.Y. 1998) (generally, there is no work-product immunity for documents prepared in ordinary course of business).

■ The deposition of Gordon Blue demonstrates that the statements were given one day after the accident on standard forms aboard the vessel. Moreover, defendant Blue testified that taking witness statements following an accident of this type was the normal practice of the vessel. These admissions establish that the statements were prepared in the ordinary course of business, not in "anticipation of litigation."

The Young firm asserts that Karen Balluf, the attorney who made the decision to withhold these documents, had "the understanding" that the witness statements were created as a result of a request by the insurance adjuster. In support, the Young firm points to the Declaration of Karen Balluf, which states:

> The statements were from the Captain and two of the crew members on board the F/V Zolotoi the day the plaintiff was injured. The file indicates that the adjuster requested the statements. The three statements were found only in the adjuster's file and were not found in documents produced by Defendant.

Balluf Decl., docket 107, ¶ 12. The Young firm also produced copies of the adjuster's file during oral argument to demonstrate that the witness statements were created pursuant to a request by the adjuster, not in the ordinary course of business. Submitted to the Court was an "Acknowledgment," dated February 3, 1999, which sets forth the preliminary facts surrounding the accident, and concludes, "We have requested injury reports and will continue our investigation into the incident." Docket no. 141. This hearsay evidence, even if considered, however, does not contradict the testimony of Gordon Blue. That the adjuster requested injury reports does not prove that the statements were taken pursuant to such requests. Indeed, Gordon Blue testified that he "make[s] [the witness statements] *available to* the claims adjusters." Blue Dep., docket no. 140, at 59:2—4.

Even if the adjuster had requested that the witness statements be taken, this does not trigger the work-product doctrine. Defendants do not cite, nor can the Court locate, any authority that supports the broad proposition that documents prepared at the request of an insurance adjuster are made "in anticipation of litigation." Indeed, it has been recognized that,

> The majority of cases that have dealt with the issue of whether investigative materials prepared by insurance claims adjusters is work-product prepared in anticipation of litigation have held that since insurance companies have a routine duty to investigate accidents, such materials are not prepared in anticipation of litigation but are prepared in the ordinary course of business absent unique circumstances showing the contrary.

*Schmidt v. California State Auto. Ass'n*, 127 F.R.D. 182, 184 (D.Nev.1989).

■ The Court finds the Young firm's conduct egregious. The claims of privilege were frivolous. A reasonable investigation into the circumstances of the creation of these statements would have made clear that these statements are not privileged under the attorney-client or work-product privileges. Had the Young firm simply taken the time to discuss these statements with their client, defendant Blue, it would have been patently clear that these documents should be produced. The Young firm argues that the decision to withhold these documents was made in good faith. The Court rejects this argument. As early as April 2002, any reasonable inquiry into the origin of these state-

ments would have revealed that they were created in the ordinary course of business and were not privileged. The Young firm failed in good faith to conduct any investigation into the circumstances surrounding the creation of these statements. Further, the fact that the Young firm claimed the attorney-client privilege, when there is not even a scintilla of evidence that an attorney was even involved in the creation of these statements, alone demonstrates bad-faith.

### (3) Duty to Disclose

The Federal Rules of Civil Procedure and this Court's Order required the Young firm to produce these witness statements. First, these statements should have been produced in the parties' initial disclosures. FED. R. CIV. P. 26(a)(1)(B) requires a party to provide "a copy of, or a description by category and location, of all documents, data compilations, and tangible things in the *possession, custody, or control* of the party and that the disclosing party *may use to support its claims or defenses* ...." (Emphasis added). The deadline for serving initial disclosures was September 18, 2002. Minute Order, docket no. 21. As the Young firm had possession of the witness statements as early as April 2002, these statements should have been produced in September 2002. The Young firm's current contention that the defendants do not plan to rely upon the statements at trial does not relieve them of the obligation they had to produce these statements. The rules refer to materials that a disclosing party "may use to support ... [its] defenses." As the Young firm conceded at oral argument, at least one statement, the statement given by Jon Jorgenson, arguably supports the defendants' contributory negligence defense. Accordingly, the statements should have been produced or a description of the statements should have been provided to the plaintiff in the Young firm's initial disclosures.

Second, the Young firm had a duty to produce the witness statements pursuant to the plaintiff's valid requests for production. Upon request, the Federal Rules of Civil Procedure require a party to disclose "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). The witness statements that the Young firm failed to produce unquestionably fall within the scope of the documents requested by the plaintiff. Plaintiff's Request for Production No. 7 asked for "any and all document pertaining to plaintiff's accident and injury." Further, Plaintiff's Request for Production No. 9 asked for "any statements, either written, taped, transcribed or communicated in any fashion of persons with knowledge, either direct or indirect, of the incident described in plaintiff's Complaint." Because these statements were given by witnesses who observed the accident in question, these statements are undoubtedly relevant to the plaintiff's claims. Because the Young firm could not in good faith believe that the asserted privileges were valid, it had an absolute duty under the Federal Rules of Civil Procedure to disclose these statements.

Third, this Court's Order compelling discovery, docket no. 86, entered on November 26, 2003, required "complete" responses. Among other things, the plaintiff requested relief because "[t]he privilege objections of Defendant [Gordon Blue] are incomplete and lack requisites pursuant to the rules, specifically a listing of the withheld documents and information, including information vital in investigating persons with knowledge about the accident." Pl's Mot. Compel, docket no. 65, at 4. The Court finds that the Young firm's failure to subsequently produce the witnesses statements was a violation of the Court's Order to Compel.

■ The Young firm's conduct in failing to produce these statements is compounded by its failure to create and produce a privilege log. Had the Young firm created a privilege log, the prejudice to the plaintiff could have been averted. The Young firm argues that the practice in this community is that if a lawyer believes a document is privileged, no disclosure of the documents or obligation to create a privilege log exists. In other words, the Young firm argues that if an attorney subjectively believes a document may be privileged there is no obligation to even disclose the existence of the document much less provide a privilege log. This is *not* the

standard of practice in the Western District of Washington. Even assuming such a practice existed, the Federal Rules of Civil Procedure cannot be replaced by community custom. The Rules place an absolute and unequivocal duty on the party withholding discovery to create a privilege log:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall *describe the nature of the documents ... that ... will enable other parties to assess the applicability of the privilege or protection.*

FED. R. CIV. P. 26(b)(5) (emphasis added). The burden is on the party asserting a privilege to show it was prepared in "anticipation of litigation" or that it is subject to an attorney-client privilege. The Young firm asserts that plaintiff was put on notice that it was withholding witness statements because it informed plaintiff that the adjuster's file had been reviewed and the non-privileged documents had been produced. This is not enough; the Federal Rules of Civil Procedure and this Court require more. The Young firm had an obligation to create a privilege log that would have disclosed that the Young firm was withholding witness statements and the nature of any asserted privilege. This would have enabled the plaintiff to assess the applicability of any asserted privileges.

Even after this Motion for Sanctions was filed and the statements had been finally produced, the Young firm continued to resist its obligation to produce them. In the Young firm's response of February 23, 2004, docket no. 106, the firm argued that "the Federal Rules of Civil Procedure did not require Blue to provide the information requested by Plaintiff, nor did the Court's November 26, 2003, Minute Order." Response, docket no. 106, at 2. In addition, the Young firm argued that "Blue's failure to produce the witness statements were both justified and harmless." *Id.* The Young firm further argued that "defendants had substantial justification for not producing the crew statements." *Id.* at 10. These arguments violate Rule 11,

constitute frivolous arguments and have continued to increase the cost of this litigation.

### (4) *Sanctions*

The Court finds that sanctions are appropriate. The Federal Rules of Civil Procedure and this Court's earlier Order placed a duty on the Young firm to produce the witness statements. The Young firm could not have believed in good faith that its asserted privileges were valid. Any inquiry by the Young firm to their own client, defendant Blue, would have disclosed the circumstances surrounding the creation of the statements. Moreover, even if the Young firm still believed a privilege existed, the defendants had the burden to create a privilege log for the documents withheld. The Young firm's withholding of these documents was in bad faith and is a blatant abuse of the discovery process.

Rule 37(c)(1) permits a district court, in its discretion, to enter a default judgment against "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ...." FED. R. CIV. P. 37(c)(1) (permitting courts to impose sanctions authorized in Rule 37(b)(2)(C)). Moreover, federal courts have inherent power to impose sanctions against both attorneys and parties for bad faith conduct in litigation or for willful disobedience of a court order. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–66, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The courts' inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers,* 501 U.S. at 43, 111 S.Ct. 2123.

The Young firm's discovery abuses and violation of this Court's Order warrant a finding of liability against the defendants represented by the Young firm. *See e.g., In re Exxon Valdez,* 102 F.3d 429, 432–33 (9th Cir.1996) (dismissal appropriate where party failed to respond to discovery requests, despite court orders to respond); *Anheuser–Busch v. Natural Beverage Distrib.,* 69 F.3d

337, 348 (9th Cir.1995) (dismissal appropriate where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings"); *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 946–47 (9th Cir. 1993) (dismissal appropriate for "repeated and flagrant" discovery abuses); *North Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir.1986) (dismissal appropriate for concealing documents and violating court orders).

██ In deciding whether a sanction of dismissal or default is appropriate, the Court must weigh five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the opposing party; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Payne v. Exxon Corp.,* 121 F.3d 503, 507 (9th Cir.1997). Where a court order is violated, the first and second factors will favor sanctions and the fourth will cut against them. *Id.*

██ Having found that the Young firm violated this Court's earlier Order compelling "complete" responses, the first and second factors favor sanctions. The third factor also supports the imposition of severe sanctions. This case has been pending since December 6, 2001; the trial date is June 1, 2004; the discovery cut-off was February 1, 2004; and the existence of the documents were not disclosed until January 23, 2004. Plaintiff has been greatly prejudiced because he has proceeded through this litigation for over two years without knowledge of material information. Plaintiff hired an expert witness on the issue of liability. The expert prepared a report based on plaintiff's testimony alone. Now after discovery is complete, witness statements that were created within twenty-four hours of the accident appear. The defendants cannot wait from December 2001 (when the action was filed) until late February 2004 (well over two years) to first disclose these statements.

Further, with respect to the fifth factor, the Court finds that less drastic sanctions would be inappropriate. The Young firm has urged the Court to consider monetary sanctions against the firm. It argues that its clients should not suffer from its counsel's conduct. Monetary sanctions, however, are inadequate. The Young firm's discovery abuses are egregious and have vitiated the basic tenets of the discovery process. Simply assessing monetary sanctions does not adequately ensure future compliance with the Federal Rules of Civil Procedure. The Court is concerned that such sanctions would create an incentive for law firms and parties to make a calculated decision to engage in discovery abuse. Parties and their counsel should not be encouraged to weigh the benefits of withholding discoverable information against the risk of sanctions for non-disclosure in the event the abuse is discovered. The Court believes that the only adequate deterrent in this case under all the circumstances is a finding of liability against the defendants represented by the Young firm.[10]

Accordingly, the Court hereby enters a finding of liability against defendants Gordon Blue, Zolotoi General Partnership, Alaska Offshore, LLC, Orca Fisheries, Inc., and PBS Vessel Management, Inc., who are represented by the Young firm, as sanctions for the Young firm's conduct. The only triable issue that remains for the trial scheduled on June 1, 2004, against these defendants is the issue of damages. The issue of liability against CBSFC shall remain for trial. Plaintiff is further awarded sanctions against the Young firm in the amount of $25,000. These sanctions shall be paid within 10 days of this Order.

IT IS SO ORDERED.

---

10. As previously noted, sanctions against CBSFC are not appropriate.