196 P.3d 277

Richard BLAISDELL,
Petitioner/Plaintiff–
Appellant

v.

DEPARTMENT OF PUBLIC SAFETY,
Respondent/Defendant–Appellee.

No. 28736.

Supreme Court of Hawai'i.

Nov. 18, 2008.

Richard Blaisdell, petitioner/plaintiff-appellant, pro se.

Christine E. Savage and Caron M. Inagaki, Deputy Attorneys General, State of Hawai'i, for respondent/defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that (1) the plain language of Hawai'i Revised Statutes (HRS) § 353–20 (1993) [1] expressly authorizes Respondent/Defendant–Appellee Department of Public Safety (DPS or Respondent) to maintain only one individual trust account for prisoners pertaining to sums collected while committed, (2) Respondent violated HRS § 353–20 because it maintained two accounts with respect to Petitioner/Plaintiff–Appellant Richard Blaisdell (Petitioner), one of which restricted withdrawals to purposes determined by Respondent, and (3) interest accrued on Petitioner's accounts must be paid. Inasmuch as the Intermediate Court of Appeals (the ICA) [2] erred in holding to the contrary as to aforesaid items (1), (2), and (3), the August 6, 2008 judgment of the ICA is vacated, the August 29, 2007 final judgment of the circuit court of the first circuit (the court) is reversed, and the case is remanded to the court for disposition consistent with this opinion. Petitioner's claim that medical co-payment deductions from one of his accounts were illegal is not considered inasmuch as the court did not rule on this claim.

---

1.  HRS § 353–20 states:
    **Custody of moneys; accounts for committed persons, etc.** All sums collected under this chapter and any other authorized sources *shall be deposited by the department into an individual trust account to the credit of the committed person.* The department shall maintain individual ledger accounts for each committed person and shall issue to each committed person a quarterly statement showing credits and debits.
    (Emphasis added.)  (Boldfaced font in original.)

2.  The memorandum opinion was issued by Presiding Judge Daniel R. Foley and Associate Judges Craig H. Nakamura and Katherine G. Leonard.

Petitioner filed an application for writ of certiorari on August 25, 2008, seeking review of the ICA's judgment filed on August 6, 2008, pursuant to its July 18, 2008 memorandum opinion vacating the court's August 29, 2007 final judgment in favor of Respondent and affirming in part and vacating and remanding in part the court's August 29, 2007 "Order (1) Granting [Petitioner's] Motion for Joinder of Action; (2) Denying [Petitioner's] Motion for Summary Judgment; & (3) Granting [Respondent's] Cross Motion for Summary Judgment." *Blaisdell v. Dep't of Pub. Safety*, No. 28736, 118 Hawai'i 317, 188 P.3d 831, 2008 WL 2815552, at *4 (App. Jul. 18, 2008) (mem.).

## I.

### A.

Petitioner is a Hawai'i inmate currently incarcerated at the Saguaro Correctional Center in Arizona. On August 10, 2004, Petitioner filed a Complaint for Interpleader and Declaratory Judgment (First Complaint). According to Petitioner, Respondent, pursuant to its Corrections Policy (COR) (later identified as COR.02.12 § 3.0.2 [3] ), divided the money earned by inmates into two accounts, a "spendable account" and a "restricted account." Petitioner claimed that

inmates were not allowed to use the money placed into the restricted account to their liking, and alleged that this practice amounted to garnishment of inmates' earnings in violation of HRS § 353–22 (Supp.2007) [4] and HRS § 353–22.5 (Supp.2007).[5] Petitioner requested the court "to issue a Declaratory Judgment ordering the return of all monies that are being held illegally by [Respondent] and to issue an order to cease this illegal practice[.]" Along with his First Complaint, Petitioner submitted a Declaration in Support of Request to Proceed in Forma Pauperis (In Forma Pauperis Request).

On August 13, 2004, the court denied Petitioner's In Forma Pauperis Request and issued him a Notice for Payment of Fees. On August 30, 2004, the court dismissed without prejudice the First Complaint because of Petitioner's non-payment of fees. Petitioner appealed this decision. On January 18, 2007, this court held in *Blaisdell v. Department of Public Safety*, 113 Hawai'i 315, 320, 151 P.3d 796, 801 (2007), that the court abused its discretion in denying Petitioner's In Forma Pauperis Request and remanded the case for hearing on the merits.

On February 16, 2007, Petitioner filed a Motion for Joinder of Action and Motion for Preliminary Injunction (First Joinder Mo-

---

**3.** Respondent's COR.02.12 § 3.0.2 states as follows:

> The trust account shall consist of two portions or accounts, a spendable account and a restricted account.

The money is divided between the two accounts as set forth in COR.02.12 § 3.0.3:

> As mandated by Department Policy COR.14.02, Inmate Work Program/Compensation, fifty percent (50%) in excess of $20 in any calendar month of all money earned by an inmate while incarcerated *shall be held in a restricted account which the inmate cannot draw from except under the provisions of this policy. The balance of the money earned shall be deposited in a spendable account which the inmate may draw from.*

(Emphasis added.)

**4.** HRS § 353–22, entitled "Earnings exempt from garnishment, etc.," states that "*[n]o moneys earned by a committed person* and held by the department, to any amount whatsoever, *shall be subject to garnishment, levy, or any like process of attachment* for any cause or claim against the committed person, *except as provided for in section 353–22.5.*" (Emphasis added.)

**5.** HRS § 353–22.5 provides as follows:

> **Garnishment to cover nonbudgeted costs.** All moneys received by windfall or *earned by a committed person shall be subject to garnishment, levy, or any like process of attachment by the director* for a cause of action or claim against the committed person *in the following order* of priority:
> (1) Restitution to victims;
> (2) Child support payments by order of the court;
> (3) Replacement costs for any facility damage that may have been caused by the committed person and all other costs associated with the facility damage; and
> (4) Reimbursement for the extraordinary cost of photocopying or postage which has been advanced by the department for litigation purposes.
> All moneys collected by the department pursuant to paragraph (3) or (4) shall be used to reimburse, in whole or in part, the nonbudgeted costs and expenses.

(Emphases added.) (Boldfaced font in original.)

tion), seeking to add to his First Complaint a claim that Respondent was illegally deducting medical co-payments from his account in violation of HRS § 353–22.5. According to Petitioner, "[o]n February 09, 2007, the medical unit deducted $3.00 from [his] earnings[.]" Petitioner also related that "$1.27 was deducted for the restricted account that is also illegal[.]"

In his First Joinder Motion, Petitioner sought an injunction against Respondent "to cease taking money from the 'inmates' earnings' and to have the $3.00 that was illegally taken from [Petitioner's] earnings returned to him until such time that he has … money from either a windfall or someone sends him money from the outside in excess of $10.00 as the rules so state." Attached to the joinder was Exhibit A, Petitioner's statement of earnings as of "02/08/2007." Petitioner related that Exhibit A showed the withdrawal of $1.27 from his spendable account and deposit of that amount into his restricted account. Petitioner also attached Exhibit B, a statement indicating a withdrawal of $3.00 from his account for "Sick Call," *i.e.*, a medical co-payment, and Exhibit C, a letter from Petitioner to Respondent's bookkeeper, objecting to deduction for the medical co-payment amount.

On March 19, 2007, Petitioner filed a complaint, similar to the first one, also entitled "Complaint for Interpleader and Declaratory Judgment," (Second Complaint) essentially reiterating his allegations above, this time averring not only a violation of HRS § 353–22, but also of the due process clause of the United States Constitution. New to his claims, Petitioner alleged that Respondent had "[f]or years" been violating the due process rights of committed persons by "not paying the inmates interest on the illegally obtained money." Similar to his First Complaint, Petitioner requested a Declaratory Judgment on the issues of garnishment, interest, and medical co-payments as follows:

[Petitioner] asks this court for a Declaratory Judgment regarding the validity of the policy and procedure that allows [Respondent] to garnish, levy, or [1] otherwise attach the earnings of the committed person and remove … and place it in a second restricted account … and [2] to not pay the committed person accrued interest on the money that was garnished from his earnings[ ] … [and 3] take medical co-payments from the committed person's earnings[.]

Petitioner asserted that "[t]here is no place in the HRS § 353 [sic] that uses the word 'restricted,' there is also no place in the statute that mentions or even implies that there are *two accounts*, … [one] account that the committed person can[ ]not have access too [sic]." (Emphasis in original.)

On March 28, 2007, the court issued an Order denying without prejudice Petitioner's First Joinder Motion and Second Complaint on the basis that Petitioner's First Complaint had not yet been served on Respondent. On July 2, 2007, Petitioner served his First Complaint on Respondent.

On July 17, 2007, Petitioner filed a second Motion for Joinder of Action (Second Joinder Motion), essentially reiterating his prior claims. Petitioner again took issue with Respondent's establishment of restricted accounts, as well as deductions from his earnings for medical co-payments. Finally, Petitioner claimed that Respondent had "never paid any interest on any of the illegally garnished money from inmate earnings[.]"

On July 20, 2007, Respondent filed its Answer to Petitioner's First Complaint. In its Answer, Respondent did not deny that it established two accounts, but merely stated that its policies spoke for themselves.

### B.

On July 23, 2007, Petitioner filed a Motion for Summary Judgment. In his motion, Petitioner reiterated that the language of HRS § 353–20 allowed Respondent to establish "only one account" for committed persons. Paraphrasing HRS § 353–22, Petitioner stated that the statute precluded Respondent from garnishing, levying, or attaching any monies earned by committed persons, "except for the four reasons set forth in HRS § 353–22.5." According to Petitioner, Respondent violated the statute because, pursuant to COR.02.12, it established a restricted

account for committed persons and placed a "large portion of the committed persons' earnings into" the restricted account, thereby "illegally garnishing or attaching the committed persons' earnings."

Petitioner again claimed the Respondent was "not paying any accrued interest for the money in the legal [spendable] account or the illegal second [r]estricted account," thus violating his due process rights.[6] Petitioner did not specifically raise the issue of deductions for medical co-payments from his account in his motion for summary judgment.

On August 1, 2007, Respondent filed a Memorandum in Opposition to Motion for Summary Judgment and Cross Motion for Summary Judgment (Cross Motion). In the Cross Motion's statement of facts, Respondent essentially quoted verbatim from HRS § 353–20,[7] HRS § 353–21 (1993),[8] and HRS § 353–22.5,[9] as well as from its operating policies. Respondent admitted that pursuant to COR.02.12 § 3.0.2 it established two accounts for committed persons, "a spendable account and a restricted account." Respondent also conceded that pursuant to its policy, it "place[d] some of [Petitioner's] earnings into a restricted savings account[.]"

In its legal argument, Respondent did dispute Petitioner's claim that placing his money into a restricted account amounted to garnishment. Respondent stated that "[Petitioner] mischaracterizes his [restricted] account as a 'garnishment.'" Respondent argued that it did not garnish Petitioner's money, and that its policy was consistent with the statute as follows:

This procedure does not amount to a garnishment, because the money, plus interest accrued, is held for him upon his release, or for uses such as family emergencies, legal obligations, or program necessities. In addition, the funds can be used to satisfy garnishments as set forth in [HRS] § 353–22.5. The money is not taken from his account and given to another, instead it is reserved for his use. This policy is clearly consistent with [HRS] § 353–20[ [10] sic] whereby [Respondent] shall allow any committed person under its direction to draw from funds in the committed person's account *such amounts and for such purpose as it may deem proper.*

(Emphasis in original.)

With regard to Petitioner's claims of unpaid interest, Respondent did not dispute Petitioner's claim that it did not pay interest on his spendable account. Respondent did not directly address Petitioner's claim of unpaid interest on his restricted account. However, in describing its policies, Respondent stated that the money in inmates' restricted accounts, *"including any interest accrued* [,] shall be paid in total to the inmate upon parole or discharge from the Department of Public Safety." (Citing COR.14.02 § 4.0.11.) (Emphasis added.) Further, Respondent stated, in reference to the restricted account, that "the money, *plus interest accrued,* is held for him upon his release, or for uses such as family emergencies, legal obligations, or program necessities." (Emphasis added.) However, no details or facts as to Petitioner's

---

6. In support of this argument, Petitioner cited *State v. Murray,* 63 Haw. 12, 621 P.2d 334 (1980), *overruled on other grounds by State v. Gaylord,* 78 Hawai'i 127, 152–53, 890 P.2d 1167, 1192–93 (1995), and *Vance v. Barrett,* 345 F.3d 1083 (9th Cir.2003).

7. *See supra* note 1.

8. HRS § 353–21 states as follows:

The department shall allow any committed person under its direction to draw from funds in the committed person's account such amounts *and for such purpose as it may deem proper.* Upon the parole or discharge of a committed person, the department shall pay the committed person any money to which the

committed person may be entitled under this chapter. Upon the death of any committed person during incarceration, all funds to which the committed person may have been entitled shall be distributed as provided by law in the same manner as the committed person's other property; provided that the funds shall first be used to satisfy any restitution order in that committed person's name or any reimbursements to the State the director has determined is owed by the committed person.
(Emphasis added.)

9. *See supra* note 5.

10. Presumably, Respondent was referring to HRS § 353–21, the section containing the language to which Respondent referred.

account itself were raised or submitted by declaration or exhibit.

To its Cross Motion, Respondent appended the Declaration of Corrections Supervisor Gary Kaplan (Declaration), and copies of its policies. In the Declaration, Gary Kaplan declared that the attached policies were "true and correct copies," and that "[t]he inmate savings account allows inmates to have money available to them upon their release from prison, and may also be used for certain specified reasons as set forth . in COR.02(4.0)(d)." The Declaration did not dispute Petitioner's claims with respect to the restricted account deductions or unpaid interest.

Respondent's . Cross Motion did not address the constitutional law violations alleged by Petitioner, or the cases he cited for support. The five-page memorandum did not cite the standard of review for summary judgment or any case law.

Petitioner filed a Reply to Respondent's Cross Motion on August 12, 2007 (Reply). In his Reply, Petitioner again argued that Respondent's practice of establishing restricted accounts amounted to a garnishment in violation of the statute. Petitioner also disputed Respondent's claim that "[s]uch savings, including any interest accrued shall be paid in total to the inmate upon parole or discharge from the Department of Public Safety." According to Petitioner, interest was only received if the inmate had a separate, outside bank account in his name:

> The only reason any inmate gets any interest is if he has a separate outside bank account in his name, the bank adds the accrued interest to his account. If the inmate does not have a bank account, he does not receive any interest whatsoever,

in fact someone other than the inmates gets all the interest from both accounts in their trust except for the outside bank accounts.

Petitioner cited Respondent's COR.02.12 § 4.0.1(b), which states that "[i]nmates shall be notified of the option they may have of either a joint account, in which *they receive no interest* but have unlimited access, or an individual account in which they receive interest but access may be limited." (Emphasis added.) This policy, according to Petitioner, violated his due process rights.

### C.

Subsequently, on August 29, 2007, the court issued an Order (1) granting Petitioner's Second Joinder Motion, (2) denying Petitioner's motion for summary judgment, and (3) granting Respondent's Cross Motion.[11] The court interpreted Petitioner's Second Joinder Motion "to actually be a motion to add additional bases for [Petitioner's] position, asserted in [Petitioner's First Complaint], that [Respondent's] procedures regarding inmate accounts are in violation of law. To that extent this motion is granted, and the court considers the additional bases stated in [Petitioner's motion for summary judgment]." [12] In ruling in favor of Respondent's Cross Motion, the court relied on Respondent's authority in HRS § 353–21 to allow withdrawals of amounts "as it may deem proper" as follows:

> Section 353–21 of the [HRS] specifically provides that [Respondent] "shall allow any committed person under its direction to draw from funds in the committed person's account *such amounts and for such purpose as it may deem proper.* ...["] [ ( )Emphasis added.[ ) ] *This statute spe-*

---

11. There are two complaints and two joinders of action documents in the record. It appears that the first set was not initially delivered to Respondent, the court ordering that Petitioner rather than the court must deliver copies to Respondent. *See* March 28, 2007 "Order (1) Denying Motion for Joinder of Action, Motion for Preliminary Injunction; (2) Resetting Deadline for Service of Process; (3) Denying Plaintiffs' Motion for the Court to Serve the Defendant, & (4) Denying Motion for Complaint for Interpleader and Declaratory Judgment." (Capitalization and brackets omitted.) The Second Complaint was

dismissed without prejudice and the First Complaint was then served on Respondent. *See* discussion *supra.*

12. Inasmuch as Petitioner's motion for summary judgment did not address his claim that medical co-payment deductions were illegal, the court did not rule on this claim. Thus, the court's ruling was confined to Petitioner's claims that restricted accounts violated HRS § 353–21 and that Respondent was not paying interest on inmate accounts.

*cifically allows [Respondent] to determine the purposes for which an inmate can withdraw funds from prison earnings. The restricted accounts created by [Respondent] are in furtherance of this specific power,* and were exercised reasonably, and do not constitute a violation of [Petitioner's] statutory and/or constitutional rights.

(Ellipses points in original.) (Second emphasis added.) (Brackets omitted.) Petitioner filed his Notice of Appeal on September 10, 2007.

## II.

In his appeal to the ICA, Petitioner largely reiterated his earlier arguments, alleging that pursuant to HRS § 353–20, Respondent was only allowed to open one account for committed persons, and that opening a restricted account in addition to a "spendable" account violated the statute. Petitioner also maintained that Respondent "was not paying interest on the inmates' money in their [sic] control." Petitioner contended that "the fact that [Respondent] does not pay accrued interest on the inmates' money in their trust account is a violation of the takings clause of the fifth and fourteenth amendments of the U.S. Constitution."

In its Answering Brief, Respondent did not dispute that it placed inmates' money into a restricted account, but argued that its policies were consistent with the relevant "statutory scheme." In response to Petitioner's claim of unpaid interest, Respondent stated that "it is clear from [its] policies and procedure COR.14.02 § 4.0.11, that any earnings set aside pursuant to the mandatory savings provision, [13] is [sic] paid in total, including any interest accrued, to the inmate upon parole or discharge." Respondent did not, however, address whether it paid interest on the spendable accounts that it kept for in-

mates. Respondent also acknowledged that Petitioner, in his Second Joinder Motion, claimed that "the medical department was unlawfully levying medical co-payment charges from inmates' spendable account [sic][.]" Apparently on the basis that "[Petitioner] did not address this ground in his [m]otion for [s]ummary [j]udgment or on Appeal[,]" Respondent did not address this claim in its Answering Brief.

In its decision, the ICA stated that "[s]ummary judgment was appropriate on the issue of restricted inmate accounts," but that "[Respondent] produced no admissible evidence that interest was in fact paid or that interest was not required to be paid on [Petitioner's] inmate accounts." *Blaisdell,* 2008 WL 2815552, at *3. According to the ICA, "[t]he issue of failure to pay interest on [Petitioner's] inmate accounts is 'a genuine issue for trial.'" *Id.* The ICA vacated the August 29, 2007 Order as to the dismissal of Petitioner's claim of non-payment of interest on his inmate account and remanded that issue for reconsideration, but affirmed the Order in all other respects. *Id.*

## III.

Petitioner lists the following questions in his Application:

a. *Whether the [ICA] erred by stating that "[Petitioner] raised no more than unsupported allegations and conclusions in his [motion for summary judgment* ]; therefore [the court] did not err in denying it[.]" (See III Discussion ¶ 1 in ICA Memorandum Opinion)

b. *Whether the ICA erred by stating that "[i]n [Respondent's] motion for summary judgment],' it made a prima facie case* that DPS Policy regarding restricted inmate accounts *was not* in violation of HRS [c]hapter 353[.]" (Emphasis added.)

---

**13.** Based on a reading of Respondent's policies, it appears that the "mandatory savings provision" referred to by Respondent is synonymous with the term "restricted account." *Compare* COR.14.02 § 4.0.11, entitled "Mandated Savings," stating that "[a]ny inmate who is provided compensation in excess of $20 in any calendar month shall have fifty percent (50%) of the excess withheld and saved[,]" *with* COR.02.12

§ 3.0.3 stating that "[a]s mandated by Department Policy COR.14.02, Inmate Work Program/Compensation, fifty percent (50%) in excess of $20 in any calendar month of all money earned by an inmate while incarcerated shall be held in a *restricted account* which the inmate cannot draw from except under the provisions of this policy." (Emphasis added.)

c. *Whether the ICA erred by stating,* "In response to [Respondent's motion for summary judgment], *[Petitioner] failed to [']set forth specific facts showing that there is a genuine issue for trial[.' "]*

d. Whether the ICA erred by claiming that "[the court] quoted the plain text of HRS § 353–21 and concluded that there was no evidence to show that the manner in which [Respondent] established restricted inmate accounts violated the statute[,]" and that *"Summary Judgment was appropriate on the issue of restricted inmate accounts and [the court] did not err in granting [Respondent] MSJ on that issue[.]"* (See III Discussion ¶ 3 in ICA Memorandum Opinion.)

(Emphases added.)

Respondent filed a memorandum in opposition to the Application. In sum, Respondent argues (1) "[Petitioner] did not support his motion with any evidence," (2) "[h]e did not provide . . . the actual language of the corrections policy[,]" (3) "[h]e did not provide evidence that he earned any monies[,]" (4) nor evidence "that said monies were placed into a 'restricted' account . . . that he was deprived of the use of said monies[,]" (5) "the restricted account is not a 'garnishment, levy, or any like process of attachment' prohibited by HRS § 353–22.5, inasmuch as the restricted account is not a creditor remedy[,]" (6) his claim that "his monies, if any, were not accruing interest" was not "supported by any admissible evidence[,]" (7) his claim for "a $3 medical 'co-Pay' . . . was not properly preserved in . . . his motion for summary judgment . . . or in his opening brief[.]"

▮ In connection with arguments (1)-(4), and (6), Respondent did not raise these objections in its trial pleadings or in the Answering Brief on appeal and so waived them. *Querubin v. Thronas,* 107 Hawai'i 48, 62 n. 5, 109 P.3d 689, 703 n. 5 (2005) (holding that "because the Appellants had every incentive, not to mention full opportunity, to object to the admissibility of the police reports" on the grounds that the reports were not authenticated, the "Appellants' challenges to the police reports, raised for the first time on appeal, are waived" (internal quotation marks, citation, and brackets omitted)).

As to argument (7), although Petitioner raised his medical co-payment claim in his Second Joinder Motion, he did not specifically discuss this issue in his motion for summary judgment. As noted before, the court thus did not rule on this particular claim. Accordingly, Petitioner's medical co-payment claim remains a matter to be determined by the court on remand.

## IV.

▮ The standard of review for the grant or denial of a motion for summary judgment is well-settled. "Unlike other appellate matters, in reviewing summary judgment decisions an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied." *Beamer v. Nishiki,* 66 Haw. 572, 577, 670 P.2d 1264, 1270 (1983). "This court reviews a circuit court's grant or denial of summary judgment *de novo." Bremer v. Weeks,* 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (quoting *Hawai'i Cmty. Fed. Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)).

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together, with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.* A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom, in the light most favorable to the party opposing the motion.

*Omerod v. Heirs of Kaheananui,* 116 Hawai'i 239, 254–55, 172 P.3d 983, 998–99 (2007) (citations omitted) (emphasis added).

## V.

As to question (a), the Application states in part that Petitioner "cit[ed] HRS § 353–22, . . . HRS [§ ]353–22.5 . . . [,] case law . . .

[and] *Doty v. Doyle*[,] 182 F.Supp.2d 750 [ (2002) ], where private out of state prisons cannot be made to send part of the inmates' earnings back to the sending state to be placed in restricted accounts[.]" We conclude that the ICA did err in its characterization of Petitioner's pleadings. Based on a review of Petitioner's papers, *see supra*, the ICA erred in concluding that Petitioner raised no more than unsupported allegations and conclusions.

As to issues of fact, the pleadings evince an agreement between the parties as to the nature and use of Petitioner's accounts. *See* discussion above. There does not appear to be a dispute as to any material facts raised in Petitioner's motion for summary judgment, except Respondent's implied reference to the payment of interest on the restricted accounts. Petitioner did set forth arguments on questions of law, arguing at the least that based on the plain language of HRS 353–22, the creation of a restricted account was not authorized.

█ As to question (b), the Application states in part,

> neither the DPS nor the ICA mentioned ... HRS § 353–22.
>
> . . . .
>
> [T]he circuit court quoted ... HRS § 353–21 and ... this [does] not ... forbid[ ] the taking of inmates' earnings, it is § 353–22[.]
>
> . . . .
>
> [I]f the money in the inmate's spendable account is gone, he is forbidden to purchase what the DPS allows the inmate to purchase ... even though he has the money ... in his illegal restricted account[.]

We conclude the ICA did err in stating that Respondent had "made a *prima facie* case that ... the restricted inmate accounts [were] not in violation of HRS Chapter 353." "A prima facie" case is not the standard for sustaining a motion for summary judgment but, rather, whether "the moving party is entitled to judgment as a matter of law," "view[ing]" the evidence "in the light most favorable to the non-moving party." *Bremer*, 104 Hawai'i at 51, 85 P.3d at 158.

As to question (c), the Application states in part,

> there is *NO GENUINE ISSUE* as to any material fact and ... the moving party is entitled to judgment as a matter of law.
>
> . . . .
>
> ... [I]nmates are ... entitled to all the accrued interest on their money held by the department. . . .
>
> ... [H]e is not at present allowed to draw any of his earnings from his restricted account ... [for] pre-approved items. . . .

(Capitalization and emphasis in original.) It is concluded the ICA did err in stating that Petitioner failed to set forth specific facts. Plainly, Petitioner did allege specific facts in his pleadings. *See supra* and *infra*. These allegations as to the establishment of restricted accounts were not contested by Respondent at summary judgment except implicitly, and generally, only with respect to interest on restricted accounts.[14] The result is that, other than the claim for interest, there were no disputed genuine issues of material facts as to Petitioner's motion for summary judgment.

14. As observed before, Respondent admitted in its Answer and Cross Motion that pursuant to its policies, it established spendable and restricted accounts for inmates. Respondent also admitted in its Cross Motion that it placed some of Petitioner's money into a restricted account. Therefore, there is no genuine issue of material fact with regard to whether Respondent divides Petitioner's earnings between a spendable account and a restricted account.

Petitioner also stated in his Second Joinder Motion that Respondent did not pay interest on inmate accounts. However, as noted, Respondent only implicitly addressed this claim, stating that "any interest accrued[ ] shall be paid in total to the inmate upon parole or discharge[.]" However, as the ICA noted, this was Respondent's "only reference" to unpaid interest in its Cross Motion. *Blaisdell*, 2008 WL 2815552, at *3. The ICA held that summary judgment in favor of Respondent on the issue of unpaid interest was "not appropriate" because "[Respondent] produced no admissible evidence that interest was in fact paid or that interest was not required to be paid on *Blaisdell's inmate accounts." Id.* at *3 (emphasis added).

## VI.

As to question (d), whether summary judgment was properly granted, the Application argues in part,

[I]nmates are ... entitled to all the accrued interest on their money held by the department[.] ...

... [H]e is not ... allowed to draw any of his earnings from his restricted accounts ... [for] pre-approved items....

... [T]he statutes ... allow[ ] for only one single account[.] ... There is no statute that authorizes a restricted account....

In [Petitioner's] motion for Joinder of Actions, filed on July 7, 2007, he mentioned ... $3 medical Co–Pay amount ... being taken from the inmates' earnings.

The only case law cited in the trial record was that set forth by Petitioner. As noted previously, and in sum, Petitioner argued that (1) that after the first $20 of an inmate's earned pay, the DPS divides one-half of the remainder in a spendable account and the other one-half into a restricted account; (2) the inmate cannot use the restricted account as he sees fit;[15] (3) the DPS also assesses a $3 co-payment medical fee for medical service from inmates' wages; (4) there are only "four reasons provided for in [HRS § ]353–22.5 [to] allow[ ] for the garnishment of inmates' earnings"; (5) those reasons do not apply here; (6) there was a violation of HRS § 353–22 and the due process clause of the Fourteenth Amendment inasmuch as HRS § 353–32 does not (a) authorize wages to be split into two accounts, (b) authorize establishment of a "restricted" account, (c) or authorize co-payment medical fees to be deducted from inmate earnings; and (7) Respondent does "not pay ... accrued interest" on the money in the restricted account.[16] Furthermore, as noted before, Petitioner indicated in his February 16, 2007 Joinder of Action in Exhibit A that as of February 8, 2007, $1.27 was withdrawn from his spendable account and deposited to his restricted account.

On the other hand, Respondent did not take issue with any of the specific facts set forth in Petitioner's pleadings, but took the position that "[DPS's] policy which places some of [Petitioner's] earnings into a restricted savings account ... is consistent with the Hawaii statutory scheme involving inmates' accounts[,]" citing to its rules and regulations.[17] On appeal Respondent also maintained that "it is clear from [DPS's] policies and procedure Cor. 14.02 § 4.0.11, that any earnings set aside pursuant to the mandatory savings provision, is paid in total, including any interest accrued, to the inmate upon parole or discharge."

## VII.

As noted by Petitioner, several statutes previously set out are pertinent. HRS § 353–20 states, in part, "All sums collected under this chapter and any other authorized sources shall be deposited by the department *into an individual trust account* to the credit of the committed person." (Emphasis added.)

HRS § 353–21 states, in part:

The department shall allow any committed person under its direction to draw from funds in the committed person's account such amounts and for such purpose *as it may deem proper.* Upon the parole or discharge of a committed person, the department shall pay the committed person any money to which the committed person may be entitled under this chapter.

(Emphasis added.)

HRS § 353–22 provides as follows: "No monies earned by a committed person and held by the department, to any amount whatsoever, shall be subject to garnishment, levy, or any like process of attachment for any cause or claim against the committed person, *except as provided for in section 353–22.5.*" (Emphasis added.)

---

**15.** As to (1) and (2), *see supra* note 14.

**16.** As noted before, matters relating to the medical co-payment deduction stated in (3) and (6)(c)

were not raised in Petitioner's motion for summary judgment and cannot be considered here.

**17.** *See supra* note 14.

HRS § 353–22.5 allows garnishment, levy, or like process in four specific circumstances as noted before, that are not relevant here.

In response, Respondent and the court relied on that part of HRS § 353–20 authorizing the department to allow funds to be withdrawn in such amounts and for such purpose as it may deem proper.

■ First, with respect to Petitioner's restricted account claim, HRS § 353–20 provides that monies shall be deposited "into an individual trust account[.]"[18] As Petitioner argues, the statute on its face does not authorize the trust account to be divided into two accounts, one of which is restricted as to withdrawals. *See Haw. Teamsters & Allied Workers, Local 966 v. Dep't of Labor & Indus. Relations,* 110 Hawai'i 259, 266, 132 P.3d 368, 375 (2006) (reaffirming that "where the statutory language is plain and unambiguous the appellate courts' sole duty is to give effect to its plain and obvious meaning" (brackets, internal quotation marks, and citation omitted)). Only one account is expressly authorized.

■ It may be argued that the restricted account can be justified as appropriate under HRS § 353–20, simply because it was "deemed proper" by Respondent as Respondent, the court, and the ICA apparently believed. However, the lack of any ascertainable standard in HRS § 353–21 by which to determine the proper exercise of Respondent's determination as to what is "deem[ed] proper" renders the statute unenforceable. *See State v. Lee,* 51 Haw. 516, 522, 465 P.2d 573, 577 (1970) (concluding that term in statute provided adequate standard by which the courts could ascertain the reasonableness of the rules promulgated by the agency); *see also Woodruff v. Keale,* 64 Haw. 85, 95, 637 P.2d 760, 767 (1981) (stating that statute must "provide[ ] clear guidelines so as to prevent arbitrary application and enforcement" in context of parental termination rights (citations omitted)); *cf. State v. Lee,* 75 Haw. 80, 93, 856 P.2d 1246, 1254 (1993) (statute must " 'provide[ ] explicit standards for

those who apply' the statute, in order to avoid 'arbitrary and discriminatory enforcement' " (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972))).

■ Second, Petitioner's right to accrued interest is dually protected via "(1) his Fifth Amendment right to just compensation for the 'taking' of his interest, and (2) his Fourteenth Amendment due process right, which prohibits prison officials from confiscating accrued net interest without statutory authorization and process." *Vance,* 345 F.3d at 1088 (footnote omitted). With respect to payment of interest, the following is germane:

[P]roperty rights can—and often do—exist wholly independently of statutes recognizing them as such. Indeed, as the Supreme Court's decisions ... demonstrate, constitutionally protected property rights can—and often do—exist *despite* statutes[.] ...

. . . .

... [T]he Supreme Court reaffirmed its commitment to the "interest follows principal" rule as a constitutionally relevant aspect of Takings Clause jurisprudence.... [T]he Court relied, in the face of a contrary state statute, upon *the traditional common law rule that "interest follows principal" in recognizing a protected property interest in earned interest income.*

*Schneider v. Calif. Dep't of Corrections,* 151 F.3d 1194, 1199–1200 (9th Cir.1998) (first emphasis in original and second emphasis added).

As noted before, Respondent's COR.14.02 § 4.0.11 does require that interest accrued on the restricted, *i.e.,* mandated, savings account, must be paid to Petitioner. In this regard, the ICA's determination that "[Respondent] produced no admissible evidence that interest was in fact paid *or that interest was not required to be paid on [Petitioner's] inmate accounts* [,]" *Blaisdell,* 2008 WL 2815552, at *3 (emphasis added), appears partially wrong, in light of Respondent's

---

18. Contrary to Petitioner's position, it is evident the monies in the restricted account are not garnished under HRS § 353–22. *See Murray,* 63 Haw. at 21, 621 P.2d at 340 (stating that in HRS chapter 353, " 'like process' is a reference to the various creditor remedies and processes available in the enforcement of civil judgment and orders").

COR.14.02 § 4.0.11. However, Respondent did not apply for certiorari from the ICA's determination. In any event, whatever dispute there was as to what interest was actually paid, if any, and on which accounts, for the reasons stated above, interest due must be awarded on Petitioner's accounts and may be determined on remand.

### VIII.

Based on the foregoing matters, the ICA erred as to its ruling on restricted accounts and Petitioner's right to accrued interest. The August 6, 2008 ICA judgment is vacated and the court's August 29, 2007 final judgment is reversed and the case remanded to the court with instructions (1) to vacate the August 29, 2007 order granting Respondent's cross-motion for summary judgment and denying Petitioner's motion for summary judgment and the August 29, 2007 judgment thereon, (2) to enter judgment declaring the "restricted" account violative of HRS § 353–20 and to order such relief to Petitioner as may be appropriate as a result of such declaration, and (3) to order interest to the extent due but not yet credited, to be paid on Petitioner's accounts. Petitioner's claim that the medical co-payment deduction was violative of HRS § 353–22.5 is not decided because it was not ruled on by the court and remains pending for disposition by the court.