**Electronically Filed
Supreme Court
SCWC-30557
04-FEB-2016
09:16 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

LLOYD R. ANASTASI,
Petitioner and Respondent/Plaintiff-Appellant,

vs.

FIDELITY NATIONAL TITLE INSURANCE COMPANY,
Respondent and Petitioner/Defendant-Appellee.

SCWC-30557

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 30557; CIV. NO. 08-1-0718)

FEBRUARY 4, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

Both Plaintiff-Appellant Lloyd R. Anastasi (Anastasi) and Defendant-Appellee Fidelity National Title Insurance Company (Fidelity) have applied for a writ of certiorari from the Intermediate Court of Appeals's (ICA) February 6, 2015 Judgment on Appeal filed pursuant to its December 30, 2014 Opinion. The ICA vacated the judgment of the Circuit Court of the First Circuit (circuit court), which was entered in favor of Fidelity

on Anastasi's bad faith claim.

Anastasi filed a bad faith and breach of contract claim against Fidelity after Fidelity allegedly delayed in making payments to Anastasi under a title insurance policy. Anastasi had loaned $2.4 million to a third party in exchange for a mortgage on a property that was supposedly owned by that third party. Fidelity insured that the third party had good title, but it was soon discovered that the warranty deed purporting to give title to the third party was forged. When Anastasi was sued by the true owners of the property, Fidelity immediately accepted tender of the claim under a reservation of rights and retained an attorney to represent Anastasi.

Anastasi argued that Fidelity committed bad faith because Fidelity knew early on in the underlying litigation that the deed was forged but continued to litigate the lawsuit. Anastasi asserts that the lawsuit was used by Fidelity to delay paying him under the policy. The circuit court granted summary judgment in favor of Fidelity on this issue.

On appeal, Anastasi argued that there were genuine issues of material fact as to whether Fidelity committed bad faith. Anastasi also challenged a circuit court order that allowed Fidelity to withhold certain documents that Anastasi requested during discovery under attorney-client privilege and work product doctrine. The ICA remanded the discovery order to

the circuit court and vacated part of the circuit court's order granting summary judgment.

For the reasons stated below, we affirm in part and vacate in part the February 6, 2015 judgment of the ICA filed pursuant to its December 30, 2014 opinion and remand to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

Anastasi made a loan to Alajos Nagy (Nagy) in the amount of $2.4 million that was secured by a mortgage on a property located in Mokulēʻia, Oʻahu. In 2005, Anastasi had over twenty years of experience in real estate transactions and made loans to individuals as a business. Anastasi's loans were equity loans based on the value of properties. Anastasi stated in his deposition that a business acquaintance of his, Paul Lee (Lee), first brought the Nagy loan to his attention. Anastasi did not know what Lee did on a day-to-day basis for work except that Lee referred prospective borrowers to Anastasi. Michael Talisman (Talisman) also brought the Nagy loan to Anastasi's attention. Anastasi stated that Lee did not tell him where he procured his customers, and Anastasi could not recall any details about how Nagy, Lee, and Talisman were connected.

In March 2005, Anastasi was in communication with Lee and Talisman regarding a potential mortgage to Nagy that would be

secured by the property.  Anastasi testified that during that month, he performed a due diligence investigation into the property.  Among documents that Anastasi reviewed as part of his investigation was a document from the tax assessor's office that indicated that the property was owned by Paul Stickney (Stickney).  At that time, the property was owned by a trust, and Stickney was the trustee and Gregory Rand (Rand) was the beneficiary of the trust.  Anastasi stated that it was his understanding that Lee and Talisman and Rand and Stickney were making arrangements between them and that Nagy would acquire title to the property unencumbered and be the one signing the loan documents.  Anastasi was assured that he would also be issued title insurance at that time.  Anastasi also reviewed an appraisal of the property done by Mark Justmann (Justmann) dated March 15, 2005.  Justmann valued the property at almost $7 million, but Anastasi believed the actual value of the property was closer to $5 million.

A $2.4 million mortgage was executed by Nagy on April 25, 2005.  On June 1, 2005, a warranty deed was apparently signed by Stickney and purported to deed the property from Stickney to Nagy in exchange for $10 in consideration.  The warranty deed and the mortgage were recorded in the Bureau of Conveyances on June 17, 2005.  Also on June 17, 2005, Fidelity issued Anastasi a title insurance policy (Policy) on the property

4

in the amount of $2.4 million.

The Policy contained a section that stated the following:

> 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE
>
> (a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.
>
> (b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
>
> (c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.
>
> (d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudice by the failure of the

5

insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## A.    Stickney Lawsuit

On November 23, 2005, Stickney and Rand filed their First Amended Complaint to Quiet Title against Nagy and Anastasi, alleging that Stickney's signature had been forged on the June 1, 2005 warranty deed.  Anastasi was served with the complaint on January 5, 2006, and he tendered the claim to Fidelity. Fidelity received notice of the claim on January 6, 2006.

Elizabeth McGinnity (McGinnity), Senior Vice-President and Major Claims Counsel for Fidelity, reviewed Anastasi's claim and determined that Fidelity should provide a defense to Anastasi under a reservation of rights.  In a letter to Anastasi dated January 23, 2006, McGinnity informed Anastasi that Fidelity accepted his tender of defense and reserved all of its rights, including its right to continue its investigation of the matter and later deny coverage.  McGinnity also informed Anastasi that Fidelity had retained Jade Lynne Ching (Ching) of Alston Hunt Floyd & Ing to represent him in the Stickney lawsuit.

Ching sent an introductory letter dated January 27, 2006 to Anastasi.  Ching wrote that she would be acting as counsel for Anastasi, and not Fidelity, even though her fees would be paid by Fidelity.  The letter also stated that because

6

Ching was serving as Anastasi's attorney, confidential information provided to Ching by Anastasi would not be disclosed to Fidelity without Anastasi's consent.  Ching wrote that it was her practice to provide Fidelity with copies of correspondence, pleadings, discovery responses, deposition transcripts, and periodic status reports, including an assessment of the likelihood of success of the defense of a claim.  Ching further wrote that

> [i]t is anticipated that Fidelity will provide recommendations and instructions to the law firm regarding the steps and procedures to be taken in defending or settling the Claim.  I shall endeavor to keep you informed of such instructions and obtain your consent where appropriate to the procedures to be taken in defending or settling the title dispute.  In the event of any dispute between you and Fidelity concerning the proper procedures to be followed in defending or settling the title dispute, it is necessary for you or your individual attorney to negotiate the matter directly with Fidelity.  This law firm reserves the right to withdraw from your representation in the event such dispute cannot be resolved by agreement between you and Fidelity and the law firm receives conflicting instructions from you and Fidelity concerning the procedures to be followed in defending or settling the Claim.

On February 13, 2006, McGinnity and Ching received a letter from an attorney, Clifford Frieden (Frieden), who was retained by Fidelity to provide coverage advice and investigate the allegations made in the Stickney lawsuit.  Frieden's letter stated that he compared Stickney's signature to the signature of the person who executed the warranty deed, and the two signatures were very different.  The driver's license number and the expiration date of the license recorded by the notary were also different from Stickney's actual driver's license number and

expiration date.  Suspecting the potential involvement of Talisman, Justmann, and Nagy in the falsely executed warranty deed, Ching filed a cross-claim against Nagy and a third-party complaint against Talisman and Justmann.

On October 6, 2006, the Stickney plaintiffs filed a motion for summary judgment.  Through Ching, Anastasi opposed the motion, but on April 11, 2007, the circuit court granted the plaintiffs' motion for summary judgment.

On April 20, 2007, Ching filed a motion for reconsideration on the grant of summary judgment on Anastasi's behalf.  The circuit court denied the motion on October 23, 2007. On November 19, 2007, Ching sent an email to McGinnity informing her that the deadline to file an appeal was two days away and that

> [t]o protect Anastasi's appeal rights, we suggest a notice of appeal be filed; we can dismiss the appeal at any time. Also, since the court denied Stickney's fee request, there is some utility in procuring an agreement from Stickney that we will not pursue the appeal so long as he does not appeal the court's denial of his request for fees.

Attached to the email was a memorandum from Ching to McGinnity that was labeled as confidential, work product, and attorney-client communication (Ching-McGinnity Memorandum).  In the memorandum, Ching gave the following conclusion: "Though we would likely succeed on appeal, it would be a pyrrhic victory since we would not be able to establish the validity of the Warranty Deed. For this reason, we do not recommend an appeal of the order

8

granting summary judgment."  McGinnity sent the following response to Ching: "Yes.  File the notice.  Thanks."  A notice of appeal was filed by Ching on November 21, 2007.

The Stickney plaintiffs also filed a cross-appeal challenging the circuit court's denial of their attorneys' fees.  On February 27, 2008, the attorney for the Stickney plaintiffs sent an email to Ching stating that the plaintiffs would accept Ching's offer to settle for $10,000 and that both parties would dismiss their appeals.  The parties eventually filed a stipulation for dismissal of all claims on August 14, 2008.

On February 28, 2008, Fidelity retained Harlin Young to appraise the property as of the date of the loss in order to determine the amount of loss in accordance with the Policy's terms.  The appraisal was issued on April 30, 2008, and the value of the property was determined to be $2,750,000.

**B.   Instant Action**

On April 8, 2008, Anastasi filed the complaint in the instant case against Fidelity, alleging breach of contract and bad faith.  On August 4, 2008, Fidelity paid Anastasi $2.4 million under the Policy.

On December 9, 2008, Anastasi filed a motion to compel discovery of certain documents and responses to interrogatories that Anastasi had requested and Fidelity had withheld or objected to.  Attached to the motion was a privilege log that Fidelity

9

submitted on October 10, 2008. The privilege log listed numerous documents that were not produced due to either attorney-client privilege or work product privilege. The log provided information on the number of pages in each document; the type of document withheld; who the recipient of the document was, if applicable; who the author of the document was; the date of the document; the subject of the document; and the claimed privilege for each document. McGinnity was listed as either the recipient or the author on many of the documents listed in the privilege log. Anastasi argued that McGinnity functioned as a claims adjuster in this case, and although her confidential communications with Frieden may be privileged, her internal work was not privileged.

In McGinnity's declaration, she stated that she was an attorney and

> [p]ursuant to my role as Major Claims Counsel, I investigated, analyzed and rendered legal advice in connection with the allegations made against the interests of our insured ("the Claim") in the Stickney lawsuit by making an initial determination on whether the Claim was at least potentially covered by the Policy, as well as determining what other actions to take in response to the Claim. The fact that an attorney was assigned to perform these tasks was not an accident. Title insurance indemnifies against loss caused by a multitude of potential problems that affect the title or interest of an insured in real property. Because of this fact and the unique and complex problems endemic to title insurance claims, many aspects relating to coverage under a title insurance policy requires both the performance of a careful legal analysis of the title insurance policy and the application of real estate and insurance coverage law to the unique facts of every case. As a result, it has become the standard in the title insurance industry to hire claims attorneys as part of a title company's legal department.

The circuit court[1] held a hearing on Anastasi's motion to compel discovery on February 3, 2009, and issued an order on March 17, 2009.  The circuit court held that "the Declaration of Elizabeth McGinnity establishes that she is an attorney employed by Defendant and therefore, the attorney-client privilege and work product privilege may be applicable to documents generated and/or received by her."  The court ordered Fidelity to review the withheld documents to determine if any additional documents could be produced.  The circuit court also ordered Fidelity to produce any of the privileged documents it elected to continue to withhold for an in camera review.

Fidelity submitted some documents to the circuit court for in camera review.  There were ten documents submitted in total, all authored or received by McGinnity (McGinnity documents).  On November 5, 2009, the circuit court[2] issued an order stating that it had "reviewed in-camera the documents claimed by [Fidelity] as privileged and ha[d] determined that [Fidelity's] assertion of attorney-client privilege and/or the work product doctrine is proper and that all of the documents are covered by the attorney-client privilege and/or the work product doctrine."

---

[1]     The Honorable Glenn J. Kim presided.

[2]     The Honorable Rom A. Trader signed the order.

11

On March 19, 2010, Fidelity filed a motion for summary judgment on Anastasi's bad faith claim. In support of the summary judgment motion, Fidelity included Ching's deposition where she testified to the following under oath:

> Q:          [W]ould it be a fair statement to say that it is your view that you were defending Mr. Anastasi, and you were determining the legal strategy that should be used to defend him?
>
> [Ching]:    That's correct.
>
> Q:          And by implication Fidelity was not directing you in how to defend Mr. Anastasi. Would that be correct?
>
> [Ching]:    That's correct.

In opposition to the motion, Anastasi asserted that Fidelity unreasonably delayed paying him under the Policy by directing Ching to continue litigation and pursue an appeal even after Fidelity learned the warranty deed was forged.

The circuit court granted Fidelity's motion for summary judgment on May 24, 2010. The circuit court made the following findings:

> 1. The undisputed facts establish that during the course of the underlying case, Paul Stickney et al. v. Nagy et al., Civil No. 05-1-2065-11 in the Circuit Court of the First Circuit, State of Hawaiʻi ("Stickney Litigation"), Fidelity immediately accepted Plaintiff Anastasi's tender of the defense of the claims asserted against him by Paul Stickney and Gregory Rand ("Stickney Plaintiffs") and fully and timely investigated Plaintiff Anastasi's claim.
>
> 2. In accordance with the Hawaiʻi Supreme Court's holding in Best Place, Inc. v. Penn American Ins. Co., 82 Hawaiʻi 120, 920 P.2d 334 (1996), Fidelity acted reasonably in its interpretation of the terms and provisions of the title insurance policy (the "Policy") issued to Plaintiff Anastasi when it chose to defend the claims asserted against him in the Stickney Litigation; particularly since Fidelity had

12

been told by attorney Jade Ching that she believed the claim against Plaintiff Anastasi was defensible because, among other things, the alleged forgery of the Warranty Deed at issue in the Stickney Litigation might have been secured with the complicity of the Stickney Plaintiffs as well as other parties in the Stickney Litigation. Given these undisputed facts, the Court finds that Fidelity was entitled to exercise its legal and contractual rights under the Policy to defend Plaintiff Anastasi against the claims alleged against him in the Stickney Litigation and to pursue that defense to a final determination.

3. While it is undisputed that the Stickney Plaintiffs' motion for summary judgment was ruled adversely to Plaintiff Anastasi and that a decision was made to file both a motion for reconsideration of that ruling and an appeal when the motion for reconsideration was denied, these facts do not support a finding that Fidelity acted in bad faith in its handling of Plaintiff Anastasi's claim.

4. Plaintiff Anastasi has failed to adduce any evidence to raise a genuine issue of material fact as to whether Fidelity controlled and/or directed Plaintiff Anastasi's attorneys at Alston Hunt Floyd & Ing in their defense of Plaintiff Anastasi in the Stickney Litigation. The undisputed facts establish that Fidelity defended the Stickney Litigation under a reservation of rights and that in accordance with its obligations under Finley vs. Home Insurance, 90 Hawaiʻi 25, 957 P.2d 1145 (1998), gave Plaintiff Anastasi's attorneys full rein to conduct the defense of their client as they deemed appropriate.

5. Plaintiff Anastasi has not adduced any evidence to support the conclusion that Fidelity directed Plaintiff Anastasi's attorneys to delay a resolution of the Stickney Litigation for the purpose of allowing Fidelity to forestall the payment of benefits to Plaintiff Anastasi under the policy. Any delay in the resolution of the Stickney Litigation was the natural byproduct of the defense strategy employed by the Alston Hunt Floyd & Ing attorneys which, as a matter of law, must be imputed to him.

6. Fidelity's decision to pay for the work performed by two appraisers, James Hallstrom and Stellmacher & Sadoyama, and its decision to order an appraisal from Harlin Young to determine the amount of the loss under the Policy were consistent with and in accordance with a reasonable interpretation of Fidelity's rights under the Policy.

Pursuant to Hawaiʻi Rules of Civil Procedure Rule 54(b), the circuit court entered judgment dismissing the bad faith claim on May 24, 2010. Anastasi filed a timely notice of appeal on June 8, 2010.

**B.    ICA Proceedings**

In his opening brief, Anastasi argued 1) that the circuit court erred in finding that Fidelity's actions were reasonable as a matter of law, 2) that the circuit court erred in ruling that the actions of Ching must be imputed to Anastasi as a matter of law, 3) that the circuit court erred in holding that the McGinnity documents were covered by attorney-client privilege or the work product doctrine, 4) that the circuit court erred in restricting discovery to other claims made in Hawaiʻi, and 5) that the court erred in awarding costs to Fidelity.[3]

Anastasi argued that an issue of fact existed as to whether Fidelity breached the duty of good faith it owed to him because "Fidelity engaged in more than two years of fruitless litigation in a feigned attempt to cure a deed that it knew was forged."  Anastasi argued that there was evidence that showed that Fidelity believed from May 2006 that the deed was forged and that Fidelity used the litigation and appraisal clauses in the Policy to delay payment to Anastasi until August 4, 2008.  Anastasi argued that there was also a question of fact as to whether Fidelity engaged in undue delay in express breach of the Policy, which required that Fidelity exercise its rights "diligently."

---

[3]    Because only the first and third issues remain before us on appeal, only those issues will be discussed herein.

14

Anastasi also argued that the circuit court erred in finding that the McGinnity documents were privileged.  Anastasi asserted among other things that because McGinnity served in the capacity of a claims adjuster and investigated Anastasi's claim in the ordinary course of business, attorney-client privilege and work product doctrine should not apply.

In its answering brief, Fidelity argued that it could not be held liable for bad faith because its actions were based on a reasonable interpretation of the insurance contract, which expressly allows defense of the claim, retention of an appraiser, and deferral of payment until after the conclusion of litigation. Furthermore, Fidelity asserted that even if these actions could support a bad faith claim, Anastasi failed to adduce evidence suggesting a genuine issue of material fact because notwithstanding the forgery, Ching believed she could successfully defend the claim against Anastasi.  Fidelity also argued that it needed Young's appraisal because previous appraisals had failed to determine the value of the property as of the relevant date of loss, January 6, 2006 (when Anastasi tendered the claim to Fidelity).

As for the discovery issue, Fidelity argued that the circuit court did not abuse its discretion in holding that the documents were privileged because Anastasi did not provide any evidence to support his contention that McGinnity acted solely as

15

an adjuster.

On December 30, 2014, the ICA issued an opinion. Relevant to this appeal, the ICA held 1) that because McGinnity acted in a dual capacity as in-house counsel and claims adjuster, the circuit court abused its discretion in ruling that all of the McGinnity documents were covered by attorney-client privilege and/or work product doctrine, 2) that the circuit court erred in determining that Fidelity acted reasonably as a matter of law, and summary judgment should be vacated, and 3) that the circuit court did not err in determining that Fidelity did not control or direct Ching's representation of Anastasi.  Anastasi v. Fidelity Nat. Title Ins. Co., 134 Hawaiʻi 400, 405, 341 P.3d 1200, 1205 (App. 2014).

Both Anastasi and Fidelity filed timely applications for writ of certiorari, and this court accepted both applications on May 22, 2015.

## II.  STANDARDS OF REVIEW

### A.  Discovery Rulings

> The Hawaiʻi Rules of Civil Procedure (HRCP) reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged.  However, the extent to which discovery is permitted under Rule 26 is subject to considerable latitude and the discretion of the trial court.  Thus, the exercise of such discretion will not be disturbed in the absence of a clear abuse of discretion that results in substantial prejudice to a party.  Accordingly, the applicable standard of review on a trial court's ruling on a motion to compel discovery, brought pursuant to HRCP Rule 26, is abuse of discretion.

16

Hac v. Univ. of Hawaiʻi, 102 Hawaiʻi 92, 100-01, 73 P.3d 46, 54-55 (2003) (internal quotation marks, citations, brackets, and ellipsis omitted).

**B.    Summary Judgment**

>       The standard of review for the grant or denial of a motion
>       for summary judgment is well-settled.  "Unlike other
>       appellate matters, in reviewing summary judgment decisions
>       an appellate court steps into the shoes of the trial court
>       and applies the same legal standard as the trial court
>       applied."  *Beamer v. Nishiki*, 66 Haw. 572, 577, 670 P.2d
>       1264, 1270 (1983).  "[The appellate] court reviews a circuit
>       court's grant or denial of summary judgment de novo."
>       *Bremer v. Weeks*, 104 Hawaiʻi 43, 51, 85 P.3d 150, 158 (2004)
>       (quoting *Hawaiʻi Cmty. Fed. Credit Union v. Keka*, 94 Hawaiʻi
>       213, 221, 11 P.3d 1, 9 (2000)).
>
>>          [S]ummary judgment is appropriate if the
>>          pleadings, depositions, answers to
>>          interrogatories, and admissions on file,
>>          together, with the affidavits, if any,
>>          show that there is no genuine issue as to
>>          any material fact and that the moving
>>          party is entitled to judgment as a matter
>>          of law.  A fact is material if proof of
>>          that fact would have the effect of
>>          establishing or refuting one of the
>>          essential elements of a cause of action or
>>          defense asserted by the parties.  The
>>          evidence must be viewed in the light most
>>          favorable to the non-moving party.  In
>>          other words, we must view all of the
>>          evidence and the inferences drawn
>>          therefrom, in the light most favorable to
>>          the party opposing the motion.
>
>       *Omerod v. Heirs of Kaheananui*, 116 Hawaiʻi 239, 254-55, 172 P.3d
>       983, 998-99 (2007) (citations omitted) (emphasis added).

Blaisdell v. Dep't of Public Safety, 119 Hawaiʻi 275, 282, 196 P.3d 277, 284 (2008).

### III.  DISCUSSION

**A.   The Discovery Dispute: Work Product Doctrine**

The main issue at the center of the discovery dispute

17

is whether attorney-client privilege and work product doctrine protect communications produced by an in-house attorney like McGinnity who performed duties both as an attorney and a claims adjuster for Fidelity.  Neither party has challenged the ICA's opinion as to attorney-client privilege, but Fidelity challenges the ICA's reference to a presumption from Harper v. Auto-Owners Insurance Co., 138 F.R.D. 655, 663 (S.D. Ind. 1991), regarding the applicability of the work product doctrine.  We find Fidelity's arguments to be persuasive, and the ICA erred to the extent that it endorsed or adopted the Harper presumption as part of our case law.

As noted by the ICA, even though HRCP Rule 26(b)(4) generally prohibits the discovery of documents prepared in anticipation of litigation or for trial, "[t]he difficulty of this issue is determining at what point work produced by an insurer's in-house counsel acting in a dual role becomes 'work prepared in anticipation of litigation.'"  Anastasi, 124 Hawaiʻi at 425, 341 P.3d at 1225.  The ICA held:

> Instead, "[i]t is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation."  Health v. F/V ZOLOTOI, 221 F.R.D. 545, 549-50 (W.D. Wash. 2004); Thomas Organ Co. v. Jadranska Slobodna Plovidba, 54 F.R.D. 367, 371 (N.D. Ill. 1972) ("[W]e conclude that any document which was prepared in the ordinary course of business and not in anticipation of trial or litigation is routinely discoverable without any showing of need under Rule 26(b)(1) and is not protected by Rule 26(b)(3) notwithstanding that it contains mental impressions, conclusions, opinions and legal theories.").  "It is presumed that a document or thing

18

prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product." <u>Harper v. Auto-Owners Ins. Co.</u>, 138 F.R.D. 655, 663 (S.D. Ind. 1991). "[M]aterials prepared as part of claims investigation are generally not considered work product due to the industry's need to investigate claims. . . . Documents created during those processes are part of the ordinary course of business of insurance companies." <u>Moe v. Sys. Transp., Inc.</u>, 270 F.R.D. 613, 624-25 (D. Mont. 2010) (block quote format and citation omitted); <u>see</u> <u>Thomas Organ</u>, 54 F.R.D. at 374 ("If every time a party prepared a document in the ordinary course of business to guide claim handling, this document was deemed to be prepared in anticipation of litigation, it is difficult to see what would be discoverable.").

In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the "because of" test is used. Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the "'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'"

<u>United States v. Richey</u>, 632 F.3d 559, 567-68 (9th Cir. 2011) (citations omitted).

Id. (emphasis added).

Turning to the facts of this case, the ICA held that based on its review of the McGinnity documents, "it is not evident that Fidelity has carried its burden of establishing that the work-product doctrine applies to preclude discovery[.]" <u>Id.</u> Although McGinnity testified that at the time the claim was tendered to Fidelity she anticipated that a coverage dispute might ensue between Fidelity and Anastasi, the ICA held that

19

there was no evidence on the record that documents were created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of litigation. Id. at 425-26, 341 P.3d at 1225-26.  After briefly addressing each document, the ICA noted that there was "nothing in the record to suggest that the circuit court considered whether the withheld documents were produced 'because of' anticipated litigation and would not have been created in a substantially similar form but for the prospect of litigation."  Id. at 426, 341 P.3d at 1226.

Fidelity did not challenge the ICA's adoption or application of the "because of" test.  Fidelity challenged only the ICA's reference to Harper emphasized above and argued that "[b]y imposing a presumption that materials prepared by an insurer before a final decision on an insured's claim are not work product, the ICA narrowed work product protections for insurers for reasons not consistent with this Court's case law."

The Hawaiʻi work product doctrine is set forth in HRCP Rule 26:

> **(b) Discovery Scope and Limits.**  Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> . . . .
>
> (4) *Trial Preparation: Materials.*  A party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of

20

> litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

HRCP Rule 26(b)(4) (effective 2004-2014) (emphasis added).  Thus, the relevant inquiry for determining whether a document can be protected by work product doctrine is whether the document was prepared in anticipation of litigation or trial.

Most courts have recognized that an insurance carrier's investigation of a claim is generally performed in the ordinary course of business and not protected by work product doctrine. Christopher C. Frost et al., Shhh!  Why the Attorney-Client Privilege and Work Product Doctrine May Not Protect Communications with Coverage Counsel 19 n.74 (2014).  Therefore, when an attorney is performing both the role of claims adjuster and counsel, courts must determine whether work product created by such an attorney was made in anticipation of litigation.  The main test adopted and employed by the ICA to answer this question was the "because of" test from United States v. Richey, 632 F.3d 559, 567-68 (9th Cir. 2011).

Under the "because of" test, courts are instructed to

21

consider whether given the totality of the circumstances it can be fairly said that a document was prepared or obtained because of the prospect of litigation.  This test aligns with the scope of the privilege as circumscribed in HRCP Rule 26 because the statutory privilege protects only materials prepared in anticipation of litigation or for trial.

However, the Harper presumption does not fit squarely with the privilege as laid out in HRCP Rule 26, because it focuses not on whether material was prepared in anticipation of litigation or for trial, but on whether material was prepared before or after a formal determination has been made on a claim. Nowhere in the rule is there reference to when a document is prepared.  Instead, the rule clearly focuses on the purpose of the prepared material and not on when it is prepared.  See Ass'n of Apartment Owners of Waikoloa Beach Villas v. Sunstone Waikoloa, LLC, 130 Hawaiʻi 152, 161, 307 P.3d 132, 141 (2013) ("It is apparent that the opinion letter is 'prepared in anticipation of litigation' because under the terms of the declaration the opinion letter is a prerequisite for litigation. Thus, the opinion letter is covered by the work-product privilege."); Save Sunset Beach Coal. v. City & Cnty. of Honolulu, 102 Hawaiʻi 465, 484, 78 P.3d 1, 20 (2003) ("Although Obayashi repeatedly states that the memorandum contains 'legal analysis, legal impressions and legal conclusions' there is no

indication that it was prepared in anticipation of litigation. We must conclude then that the work-product privilege is inapplicable.").

Moreover, HRCP Rule 26(b)(4) does not create a presumption. A presumption is defined as a "rebuttable assumption of fact . . . that the law requires to be made . . . ." Hawaiʻi Rules of Evidence (HRE) Rule 301(1) (emphasis added). However, there is no statute or case in Hawaiʻi that requires that the trier of fact assume in insurance claims cases that materials prepared before a final determination on the insured's claim are not work product and that materials prepared after a final determination are work product. The ICA erred to the extent that it endorsed or adopted the Harper presumption that was not required by our law.

But because the circuit court must still address whether the documents meet the "because of" test, we affirm the ICA's judgment insofar as it remanded the issue to the circuit court for further proceedings.

**B.   Summary Judgment on Bad Faith Claim**

### 1.   Enhanced Standard of Good Faith

In Finley v. Home Insurance Co., this court adopted an enhanced standard of good faith for insurers who defend insureds under a reservation of rights. 90 Hawaiʻi 25, 36, 975 P.2d 1145, 1156 (1998). This standard states that

23

> an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith. Failure to satisfy this enhanced obligation may result in liability of the company, or retained defense counsel, or both.
>
> This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client . . . . Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

Id. at 36-37, 975 P.2d at 1156-57 (quoting Tank v. State Farm Fire & Cas. Co., 715 P.2d 1133, 1137 (1986)) (internal quotation marks omitted).

The ICA held that the grant of summary judgment in favor of Fidelity on Anastasi's bad faith claim should be vacated because the circuit court erred in holding that Fidelity acted reasonably as a matter of law. Anastasi, 134 Hawaiʻi at 429, 341 P.3d at 1229. The ICA held that viewing the evidence in the light most favorable to Anastasi (the non-moving party), there was evidence that Fidelity knew within four months of receiving the claim that the warranty deed was forged and Fidelity did not address how proving fraud or forgery in the Stickney lawsuit would have affected coverage under the Policy, it could not be said that, as a matter of law, Fidelity's actions following its knowledge that the deed was forged were reasonable. Id. Although the Policy may have allowed Fidelity to withhold payment until after the resolution of the Stickney lawsuit, the ICA wrote

24

that the relevant question "under Best Place is whether, given the information Fidelity had, the timing when it had the information, and when it reasonably resolved the issues presented by Anastasi's claim, was there an unreasonable delay in paying Anastasi." Id. The ICA also held that there was a genuine issue of material fact as to whether Fidelity demonstrated a greater concern for its monetary interest than for the insured's financial risk in violation of the enhanced standard of good faith. Id.

Fidelity challenged the ICA's judgment, arguing 1) that Fidelity should be allowed to rely on provisions of the Policy that allow it to pursue litigation to final judgment before having to determine and pay losses, and 2) that the enhanced standard of good faith should not apply to title insurers because "Fidelity and Anastasi's interests were unified in the underlying action," and Anastasi was not at risk of greater personal liability.

Fidelity's arguments are not persuasive. First, Fidelity provides no support for its argument that it should not be found to have acted unreasonably or in bad faith because it was exercising its rights under the Policy. Bad faith implies unfair dealing, and insurance companies should not be allowed to hide behind policy clauses in order to delay payments. If insurance companies were held to be acting reasonably as a matter

25

of law any time they filed or defended lawsuits under a contractual right to pursue litigation, frivolous lawsuits could be used to unfairly delay payments to insureds for years. Insurance companies must act reasonably even when exercising contractual rights.  See Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawaiʻi 120, 122, 920 P.2d 334, 346 (1996) ("Without the threat of a tort action, insurance companies have little incentive to promptly pay proceeds rightfully due to their insureds, as they stand to lose very little by delaying payment.").  On remand, Fidelity will have the opportunity to present evidence as to why its actions were reasonable or in good faith, but based on the record before us, we decline to hold that Fidelity acted in good faith as a matter of law when it exercised its contractual rights.

Secondly, this court declines to exclude title insurance companies from the enhanced standard of good faith when claims are defended under a reservation of rights.  Fidelity's and Anastasi's interests may have been aligned in the Stickney lawsuit, but their interests were not identical.  As this court has noted,

> When an insurer provides an unconditional defense for its
> insured, the insured and the carrier share the same goal --
> minimizing or eliminating liability in the third party
> action -- and no conflict of interest inhibits the ability
> of one lawyer to represent both the insurer and its insured.
> But where the carrier questions the availability of coverage
> and provides a defense in the third party action subject to
> a reservation of rights, a conflict exists -- because the

> insured's goal is coverage, which flies in the face of the insurer's desire to avoid its duty to indemnify.

Finley, 90 Hawaiʻi at 30, 975 P.2d at 1150 (quotation marks and citation omitted).  When any insurer, including a title insurer, defends an insured under a reservation of rights, the insurer maintains the right to evaluate and disclaim coverage. Therefore, there is inherently a potential for conflict between the insurer and the insured in such a situation, and there is nothing distinctive about title insurance that would eliminate such potential.  In fact, the record in this case shows that Fidelity suspected that Talisman, Justmann, and Nagy may have been involved in falsely executing the warranty deed.  Thus, Fidelity may have had an interest in delaying or prolonging resolution of the Stickney lawsuit in order to investigate their potentially nefarious involvement in the matter, which would have diverged from Anastasi's interest in prompt payment under the Policy.

We do not express any opinion as to whether Fidelity's actions constituted bad faith.  However, we find that there is a genuine issue of material fact as to whether Fidelity met the enhanced standard of good faith.  Thus, we affirm the ICA's judgment on this issue.

### 2.    Whether Fidelity Induced Ching to Violate HRPC

After holding that summary judgment on Anastasi's bad

faith claim was not appropriate, the ICA affirmed the circuit court's finding that "Anastasi failed to show any genuine issue of material fact that Ching breached her ethical duties to him or that Fidelity induced any such breaches." Anastasi, 134 Hawaiʻi at 431, 341 P.3d at 1231. The ICA held that the four pieces of evidence relied on by Anastasi to argue that Fidelity improperly controlled Ching's actions in the Stickney lawsuit did not suggest that Ching was actually constrained in exercising her professional judgment. Id. at 430-31, 341 P.3d at 1230-31. The four pieces of evidence were a statement from Fidelity's claims handbook, the introductory letter Ching sent to Anastasi, the Ching-McGinnity Memorandum, and the emails between Ching and McGinnity wherein McGinnity directed Ching to file the notice of appeal.

Anastasi argues that the ICA gravely erred by failing to hold Fidelity to an enhanced standard of good faith in analyzing Fidelity's interactions with Ching and by viewing the evidence regarding Ching's inducement by Fidelity unfavorably to Anastasi, the non-moving party. This court has held that "where an insurer is required to provide a defense for its insured, it would be a breach of the duty of good faith to induce retained counsel to provide a defense which did not meet the professional standard set forth by the [Hawaiʻi Rules of Professional Conduct]." Finley, 90 Hawaiʻi at 36, 975 P.2d at 1156. And HRPC

requires that attorneys who accept payment for a defense of the insured

> (1) consult with the client as to the "means by which the objectives [of the representation] are to be pursued"; (2) not allow the insurer to interfere with the attorney's "independence of professional judgment or with the client-lawyer relationship"; and (3) not allow the insurer "to direct or regulate the lawyer's professional judgment in rendering such legal services."

Id. at 33, 975 P.2d at 1153 (quoting HRPC Rules 1.2; 1.8(f); 5.4(c)).

Viewing the evidence in the light most favorable to Anastasi, the evidence is sufficient to raise a genuine question as to whether Ching allowed Fidelity to direct or regulate her professional judgment. Fidelity's Claims Handbook expressly states, "If the outcome of a suit is unfavorable to the insured, the insurer may determine, in its sole discretion, whether or not to appeal. . . . The insurer will generally insist upon the right to select counsel of its own choosing because it is in control of the litigation." Ching also stated in her letter to Anastasi that it was "anticipated that Fidelity will provide recommendations and instructions to the law firm regarding the steps and procedures to be taken in defending or settling the Claim." The Ching-McGinnity Memorandum and the emails between Ching and McGinnity could also support a conclusion that Ching was deferring to McGinnity on the issue of whether to file an appeal.

29

The ICA referred to Ching's deposition where she stated that she did not allow Fidelity to direct her in how to defend Anastasi. Anastasi, 134 Hawaiʻi at 430, 341 P.3d at 1230. And while it may ultimately be determined that Ching did not breach her duties, the evidence put forth by Anastasi is sufficient to raise a question of fact. Therefore, the ICA erred in holding that Anastasi failed to show any genuine issue of material fact that Fidelity induced Ching to breach her ethical duties to Anastasi. The ICA's judgment in this regard is vacated and remanded to the circuit court for further proceedings.

## IV. CONCLUSION

For the reasons stated above, we affirm in part and vacate in part the ICA's February 6, 2015 judgment on appeal, and accordingly vacate the circuit court's judgment and remand to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Philip J. Leas, John P. Duchemin and Trisha H.S.T. Akagi for petitioner and respondent Lloyd R. Anastasi | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| Edmund K. Saffery, Thomas Benedict and Dawn T. Sugihara for respondent and petitioner Fidelity National Title Insurance Company | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |
| Wayne Nasser and Benjamin M. Creps for *amicus curiae* Hawaii Land Title Association | |

